IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| GERETTA C. ELIAS, ) | |
| Administratrix of the Estate ) | |
| of Gerald D. Sydnor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:13-CV-22-WKW |
| ) | [WO] |
| THOMAS F. BOSWELL, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

Before the court is Defendants' Motion to Dismiss the Amended Complaint. (Doc. # 29.) The motion has been fully briefed. (Docs. # 30, 31, 32.) After considering Plaintiff's amended complaint, the parties' arguments, and the relevant law, the court finds that the motion is due to be granted in part and denied in part.

## **I. JURISDICTION AND VENUE**

The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. The parties contest neither personal jurisdiction nor venue.

## **II. STANDARD OF REVIEW**

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "take the facts alleged in the complaint as true and construe them in the light most favorable to" the plaintiff. *Danley v. Allen*,

540 F.3d 1298, 1304 (11th Cir. 2008).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### III.  BACKGROUND

**A.    Facts**

Plaintiff Geretta C. Elias is the Administratrix of the Estate of her father, Gerald D. Sydnor.  Mr. Sydnor, who was fifty-four, died while in the custody of the Sheriff of Russell County, and all of Ms. Elias's claims against Defendants arise from the circumstances surrounding her father's death.  Ms. Elias is suing Thomas F. Boswell ("Sheriff Boswell"), who was Sheriff of Russell County at the time of Mr. Sydnor's death; Loetta Holland ("Lt. Holland"), who was and is the Russell County Jail Administrator; and William S. Warr, M.D., who works for the Russell County Jail as a medical doctor treating inmates in the sheriff's custody.[1]  Neither the amended complaint nor the responsive briefing makes clear why Mr.

---

[1] The amended complaint alleges that Dr. Warr worked at the jail to provide medical services to the jail inmates "by agreement with [the] Russell County Commission . . . and [Sheriff] Boswell . . . and the City of Phenix City." (Doc. # 28, at 2–3 ¶ 4.)

Sydnor was in Sheriff Boswell's custody or whether Mr. Sydnor was a pretrial detainee or a convicted prisoner.[2]

Mr. Sydnor suffered from preexisting infirmities including "inflammatory bowel disorder, hyperthyroid disease, skin disease[,] and diabetes," and Ms. Elias claims these conditions required medical attention before and during his incarceration. (Doc. # 28, at 3 ¶ 5.) When Ms. Elias and her sister visited their father at the Russell County Jail, he reportedly complained to them that he was not being given his medication. (Doc. # 28, at 3 ¶ 6.) The amended complaint does not allege what medicines Mr. Sydnor required or what consequences could accompany his deprival of medication. He told his daughters that when he complained to unspecified jail authorities about inadequate medical care, they threatened to "put [him] in the hole." (Doc. # 28, at 3 ¶ 6.) Ms. Elias alleges that Sheriff Boswell and Lt. Holland "knew or had reason to have known" about Mr. Sydnor's infirmities and need for care while in their custody. (Doc. # 28, at 3 ¶ 5.)

On January 18, 2011, Mr. Sydnor fell seriously ill and needed to be transported to a hospital for medical treatment. Ms. Elias avers that her father had been "severely ill in excess of five days" prior to his transport and that he exhibited symptoms of "acute chest pain" and "cardiac rhythmic disturbance." (Doc. # 28,

---

[2] For purposes of deciding whether Ms. Elias states a claim, and in order to tell Mr. Sydnor's story most clearly, the court interjects at times to point out what Ms. Elias's pleading implies, as well as what it fails to say at all, expressly or impliedly.

at 4 ¶ 7.)  Mr. Sydnor would later tell hospital staff that he had suffered vomiting, diarrhea, chills, lack of appetite, and dizziness for the five days before arriving at the hospital.  (Doc. # 28, at 4 ¶ 7.)  It is not clear whether his illness was the result of a lack of medication or other necessary care.  It is also not clear at what point Mr. Sydnor's chest pain and heart complications developed – whether on the day he went to the hospital, or earlier.

A jail supervisor, Sergeant Steward, instructed another deputy, Lawrence Lovett, to transport Mr. Sydnor to Jack Hughston Hospital Emergency Room.[3]  (Doc. # 28, at 3–4 ¶ 7.)  There is no allegation as to what time this decision was made.  The amended complaint cites Officer Lovett's report that "jail personnel" told Officer Lovett that "Mr. Sydnor had a bowel problem."  (Doc. # 28, at 4 ¶ 7.)  Officer Lovett's report also stated that Mr. Sydnor complained of chest pain and difficulty breathing ("wheezing sound") "once [they arrived] at the emergency room."  (Doc. # 28, at 4 ¶ 7.)  There Mr. Sydnor also reported his symptoms from the previous five days.  It is unclear how many hours Mr. Sydnor was in the hospital's care, but the amended complaint alleges that Mr. Sydnor received medical treatment from doctors and nurses at the emergency room before he died around 3:48 p.m.  Even though it appears that Ms. Elias possesses a record from

---

[3] Sgt. Steward and Officer Lovett are not defendants, and the amended complaint does not allege that either of them acted with deliberate indifference to Mr. Sydnor's serious medical needs.

the Russell County Coroner, (*see* Doc. # 28, at 4 ¶ 7), the pleading does not allege how or why Mr. Sydnor ultimately died, although it implies that he would not have died if he had received emergency medical care sooner.

Ms. Elias alleges that Dr. Warr "knew or should have known" that her father needed hospitalization "long before" January 18, 2011, and that it was his duty to inform Sheriff Boswell and Lt. Holland that inmates like Mr. Sydnor needed hospital care. (Doc. # 28, at 4–5 ¶¶ 8–9.) Likewise, she claims that Sheriff Boswell and Lt. Holland "knew or should have known" about Mr. Sydnor's medical history and need for treatment while he was incarcerated, and that they should have had him transported to the hospital "long before" January 18, 2011. (Doc. # 28, at 4–5 ¶¶ 8.) She further claims that Sheriff Boswell and Lt. Holland failed to adequately train and supervise jail officers who were charged with attending to inmates so that the officers would appreciate when patients required emergency medical care. (Doc. # 28, at 6 ¶ 13.) She does not allege what each Defendant specifically knew about Mr. Sydnor's condition, when each became aware of it, how each became aware of it, or if each chose to ignore it.[4]

---

[4] The original complaint also alleged knowledge in a conclusory way. (Doc. # 1, at 3 ¶ 5 ("[D]efendants knew or had reason to have known of [Mr. Sydnor's] medical history and need for adequate medical care and treatment while in their custody.").) In its order denying the motion to dismiss the original complaint and granting the motion for a more definite statement, the court remarked that "[t]he allegations in the complaint amount to little more than legal conclusions," and "there are no factual allegations that suggest any of the named Defendants knew or should have known Mr. Sydnor was sick." (Doc. # 26, at 1–2.) Ms. Elias's counsel has

5

B.     **Procedural History**

In January 2013, Ms. Elias filed a five-count complaint against Sheriff Boswell, Lt. Holland, and Dr. Warr. (Doc. # 1.) Defendants moved to dismiss the complaint in its entirety, or alternatively, for a more definite statement. (Docs. # 16, 17.) The court denied as moot the motion to dismiss and granted the motion for a more definite statement and directed Ms. Elias to file an amended complaint. (Doc. # 26.) The court specifically advised her attorney to do the following when pleading: (1) identify Defendants individually, rather than collectively; (2) clearly state in each count whether Defendants were sued in their individual capacity, official capacity, or both; (3) identify the action or inaction attributable to Defendants that caused harm to Mr. Sydnor and the legal basis for a claim arising from the action or inaction; (4) state the claims in numbered paragraphs, per Federal Rule of Civil Procedure 10(b); and (5) abstain from cutting and pasting allegations from other pleadings. (Doc. # 26, at 2–3.)

Ms. Elias filed an amended four-count complaint in which she sues all Defendants for deliberate indifference in violation of the Fourteenth and Eighth Amendments, and Sheriff Boswell and Lt. Holland for failure to train and supervise subordinate officers (Count I); all Defendants for wrongful death under Alabama law (Count II); Dr. Warr for medical negligence and wantonness under

---

responded to that deficiency by adding more of the same conclusory allegations that Defendants knew or should have known about Mr. Sydnor's condition.

6

Alabama law, "specifically, the Alabama Medical Liability Act" (Doc. # 28, at 9) (Count III); and all Defendants for declaratory judgment, injunctive relief, and writ of mandamus (Count V).[5]

Defendants have moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) on numerous grounds. For the reasons to be explained, the court considers only the arguments concerning Count I's federal claims for deliberate indifference and supervisory liability arising under § 1983.

### IV. DISCUSSION

A.    **Deliberate Indifference Claim**

Defendants argue that they are entitled to qualified immunity on Ms. Elias's § 1983 deliberate indifference claim because there are not sufficient factual allegations in the amended complaint regarding any actions Defendants allegedly took or failed to take. (Doc. # 30, at 2.) More specifically, Defendants challenge the amended complaint's failure to allege that any Defendant possessed subjective knowledge of Mr. Sydnor's serious medical condition or acted with deliberate indifference with regard to their knowledge. They contend that the inadequacy of the pleading is "fatal" to Ms. Elias's claims under § 1983. (Doc. # 30, at 8, 10–

---

[5] There is no "Count IV" in the amended complaint, whether or not Ms. Elias intended there to be a fourth count. (*See* Doc. # 31, at 1 ("The complaint is comprised of five (5) counts.").)

7

12.) And in the absence of an alleged constitutional violation, Defendants assert that they are entitled to qualified immunity from suit. *See Adams v. Franklin*, 111 F. Supp. 2d 1255, 1264–65 (M.D. Ala. 2000) (DeMent, J.).[6]

Ms. Elias defends her pleading as asserting sufficient factual material to support her claims, but she does not directly respond to Defendants' criticism that the pleading fails to allege that Defendants were aware of Mr. Sydnor's need for medical treatment. Rather, she appears to reason that because Mr. Sydnor *died*, each Defendant must have been deliberately indifferent to his health. (*See e.g.*, Doc. # 31, at 6 ("[The plaintiff [is] at a loss [as] to what more of [a] factual basis [she] can show the court other than DEATH!!!").) She asserts that it is too early in this litigation to dismiss claims on grounds of qualified immunity. (Doc. # 31, at 5.) Moreover, with respect to Defendants' arguments that Ms. Elias's pleading is insufficient to satisfy the Alabama Medical Liability Act's heightened pleading standard for malpractice claims, Ms. Elias posits that "without discovery, [she] has little information as to the deceased's medical records and jail logs so as to be

---

[6] "When a government official moves to dismiss a claim on the basis of qualified immunity, the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined. That is, a defendant can defeat a plaintiff's § 1983 claim if the complaint fails to state a claim upon which relief can be granted. Similarly, under the defense of qualified immunity, a defendant is immune from liability if the complaint fails to state a violation of a clearly established constitutional right of which a reasonable person would have known." *Adams*, 111 F. Supp. 2d at 1255–56 (internal quotation marks, alterations, and citations omitted).

more specific" in her pleading.  (Doc. # 31, at 6.)  The court presumes that she could make the same argument with respect to her deliberate indifference claim.

To state a constitutional claim of deliberate indifference under the Eighth or Fourteenth Amendment,[7] Ms. Elias must allege facts that (1) Mr. Sydnor had a serious medical need, (2) Defendants were deliberately indifferent to the need, and (3) their indifference caused Mr. Sydnor's death.  *See Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010).  Here, Ms. Elias has alleged several facts suggesting that Mr. Sydnor had a serious medical condition requiring emergency care.  The rub is whether Ms. Elias has alleged factual content that could substantiate her claim that Defendants were deliberately indifferent to Mr. Elias's need for care.  To allege deliberate indifference, she must plead facts that allow the court to draw the inference that (1) Defendants were subjectively aware of a substantial risk of serious harm to Mr. Sydnor, (2) Defendants disregarded that risk, and (3) Defendants' conduct was more than gross negligence. *See Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013); *Carter v. Galloway*, 352 F.3d

---

[7] Ms. Elias contends that it makes no difference whether Mr. Sydnor was a pretrial detainee or a prisoner because the same deliberate indifference analysis applies whether the claim arises under the Eighth or the Fourteenth Amendment.  The court's analysis would be tidier if it was clear which Amendment is implicated, but it is true that whether Mr. Sydnor was a pretrial detainee or a convicted inmate, the deliberate indifference analysis is the same.  *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997) ("[T]he minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner; both the right to due process and the right to be free from cruel and unusual punishment are violated by a government official's deliberate indifference to serious medical needs.").  Thus it is proper to rely on opinions deciding deliberate indifference claims arising under either the Eighth or the Fourteenth Amendments.  *Id.*

1346, 1349 (11th Cir. 2003). The pleading should ascribe specific knowledge to each Defendant because "[e]ach individual Defendant must be judged separately and on the basis of what that person kn[ew]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). "Although notice pleading does not require a plaintiff to specifically plead every element of his cause of action, a complaint must still contain enough information regarding the material elements of a cause of action to support recovery." *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011).

As to Defendants' subjective awareness of Mr. Sydnor's need for medical care, the amended complaint avers that, before Mr. Sydnor's health deteriorated to the point at which Defendants transported Mr. Sydnor to the hospital, Mr. Sydnor complained – to someone, but not particularly to these Defendants – about not being given his medicine or other adequate medical treatment for his pre-existing conditions. (Doc. # 28, at 4 ¶ 6.) Further, the amended complaint specifically alleges that Mr. Sydnor fell ill, and grew increasingly sicker, for five days prior to being taken to the ER on January 18, 2011. (Doc. # 28, at 4 ¶ 7.) The pleading alleges that Sheriff Boswell and Lt. Holland "knew or had reason to have known of [Mr. Sydnor's] medical history and need for adequate medical care and treatment while in their custody," (Doc. # 28, at 3 ¶ 5; 4–5 ¶ 8), and that "[u]pon information and belief, [Dr.] Warr[,] as treating physician . . . , knew or should have known that

[Mr. Sydnor required] hospitalization long before" deputies transported him to the ER on January 18, 2011 (Doc. # 28, at 5 ¶ 9).

Defendants criticize the allegations that they "should have known" anything as inadequate to support any claim for deliberate indifference because actual, subjective awareness is required. Further, they argue that, at best, Ms. Elias has alleged that Sheriff Boswell and Lt. Holland knew that Mr. Sydnor suffered from common, but not life-threatening ailments. And as for the more serious life-threatening symptoms alleged in the pleading (*i.e.*, Mr. Sydnor's chest pains and difficulty breathing), Defendants contend that as alleged in the amended complaint these conditions did not manifest until an officer took him to the hospital.[8] Rather, prior to January 18, 2011, Mr. Sydnor reported to the hospital staff that he had been suffering at the Jail from "vomiting, diarrehea [sic], chills[,] and dizziness" and that he had been unable, or unwilling, to eat for two or three days. (Doc. # 28, at 4 ¶ 7.)

Hence, Defendants posit that Ms. Elias's claims do not suggest that they were actually aware of Mr. Sydnor's severe medical problems in advance of the decision to take Mr. Sydnor to the hospital. Moreover, Defendants contend the amended complaint attributes even less knowledge to Dr. Warr; the pleading

---

[8] (*See* Doc. # 28, at 4 ¶ 7 ("[J]ail personnel told [Officer Lovett] that Mr. Sydnor had a bowel problem. *Once at the emergency room*, [Mr.] Sydnor complained about chest pain and he also had a wheezing sound every time he took a breath." (emphasis added)).)

11

merely "relies on his role 'as treating physician' to imply that he must have been aware" of Mr. Sydnor's need for hospitalization. (Doc. # 30, at 11 (citing Doc. # 28, at 5 ¶ 9).)

The court agrees that Ms. Elias offers conclusory allegations that each Defendant knew that Mr. Sydnor needed professional medical treatment sooner than he received it. She provides no facts demonstrating how or when Defendants knew that Mr. Sydnor required hospitalization or emergency care. Without more factual allegations, the deliberate indifference claim fails to survive the scrutiny required at the motion to dismiss stage, especially where the qualified immunity defense is at stake. *See Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009) ("[T]he Supreme Court instructs courts to resolve immunity questions at the earliest possible stage in litigation." (quotation marks omitted)).

For example, in *Harper v. Lawrence County, Alabama,* 592 F.3d 1227 (11th Cir. 2010) the court considered the propriety of a Rule 12(b)(6) dismissal on qualified immunity grounds where the plaintiff claimed that the sheriff and jail administrators were deliberately indifferent to a deceased inmate's symptoms of severe alcohol withdrawal. *Id.* at 1234. The plaintiff in *Harper* alleged that the decedent informed the defendants that he had a medical history of seizures due to alcohol withdrawal. *Id.* The court reasoned that the allegations failed to meet *Twombly*'s pleading standard because plaintiff failed to offer any facts suggesting

12

that the particular defendants knew of the decedent's medical history. *Id.*[9] Further, the court reasoned that even if the particular defendants knew of the decedent's medical history, the complaint failed to allege that they individually knew that the decedent was in serious need of medical care in the days preceding his death. *Id.*[10] Similarly, Ms. Elias's amended complaint fails to state factual allegations supporting her legal conclusion that Defendants knew about Mr. Elias's serious medical needs yet chose to ignore them.

The court is mindful that the threat of sanctions in Federal Rule of Civil Procedure 11 prevents litigants from pleading factual allegations that lack evidentiary support. But the Rule permits parties to plead "factual contentions" that "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery" so long as the parties "identif[y]" such claims. Fed. R. Civ. P. 11(b)(3). Furthermore, it is understood that a plaintiff may lack the means of ascertaining factual matter essential to support her claim because the information she needs is within the exclusive purview of the defendants. That is especially true in this instance because Mr. Sydnor's untimely death renders him

---

[9] The *Harper* panel also considered the Eleventh Circuit's now defunct heightened pleading standard for § 1983 claims against individuals entitled to qualified immunity, but the court concluded that the deliberate indifference claims failed to satisfy Rule 8's requirements irrespective of the heightened pleading standard. *Id.* at 1234.

[10] And yet, because the plaintiff in *Harper* specifically pleaded that (1) other inmates reported the decedent's strange behavior to two specific defendants and (2) those two defendants communicated their awareness of the information about the decedent to other jailers, the court held that knowledge was sufficiently alleged and those two particular defendants were not entitled to qualified immunity at the motion to dismiss stage. *Id.* at 1234–35.

13

unavailable to assist in Ms. Elias's prosecution of any claim on behalf of his Estate. But here, after pleading once, being ordered to amend and plead again pursuant to Rule 12(e), and submitting virtually the same responsive brief to two Rule 12(b)(6) motions to dismiss (*compare* Doc. # 21 *with* Doc. # 31), Ms. Elias makes no Rule 11(b)(3) allegations and assurances or a comparable showing that discovery will reveal Defendants' actual, subjective awareness of Mr. Sydnor's serious medical needs. More specifically, she offers no argument that discovery will implicate the named Defendants with the requisite subjective knowledge of Mr. Sydnor's serious illness or willful disregard for his safety.

For the foregoing reasons, Defendants are entitled to qualified immunity because Ms. Elias fails to allege a violation of a clearly established constitutional right, and the deliberate indifference claims against Defendants will be dismissed for Ms. Elias's failure to state a claim upon which relief can be granted. *See Adams*, 111 F. Supp. 2d at 1265–66.[11]

---

[11] Although the amended complaint is silent about whether Ms. Elias is suing Defendants in their individual capacities, official capacities, or both – even though the court specifically instructed her to plead Defendants' capacities (*see* Doc. # 26, at 2) – Ms. Elias states in her responsive briefing that all claims are against Defendants in their individual capacities, except that she sues Dr. Warr in both his individual and official capacities. (Doc. # 31, at 4.) Before Ms. Elias made this clear, Defendants argued that any suit against them in their official capacities for money damages is effectively a suit against the state, and the Eleventh Amendment prohibits the court from exercising jurisdiction over suits against the state absent the state's consent to suit or waiver of immunity. (*See* Doc. # 30, at 3 (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524–26 (11th Cir. 1990)).) Moreover, Defendants previously argued in their first motion to dismiss that state actors acting in their official capacities are not "persons" subject to liability under § 1983, and she renews the argument in the pending motion to dismiss. (*See* Doc. # 16 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).) Ms. Elias does

B.  **Supervisory Liability Claim**

Sheriff Boswell and Lt. Holland argue that Count I's additional claim that they "failed to adequately supervise and train[] correction officers," (Doc. # 28, at 6 ¶ 13), is due to be dismissed.  All parties agree that the Eleventh Circuit has not addressed Defendants' contention that the Supreme Court's decision in *Iqbal* eliminates *any* type of § 1983 failure to train or failure to supervise claim against a supervisory defendant.  (*See* Docs. # 30, at 5; 31 at 5.)  Defendants additionally argue that the claims nevertheless should be dismissed because supervisory officials are not liable for the constitutional torts of their subordinates, and Ms. Elias has not pleaded facts substantiating a causal connection between Defendants' conduct and an alleged constitutional deprivation.  (Doc. # 30, at 9 (citing *Cottone v. Jenne*, 326 F.3d 1352 (11th Cir. 2003)).)

*Cottone* squarely addressed a Rule 12(b)(6) motion to dismiss claims against law enforcement supervisors for their failure to train and supervise deputy law enforcement and corrections officers.  326 F.3d at 1356–57.  There, the Eleventh Circuit explained that "supervisory liability under § 1983 occurs either when the

---

not counter these arguments, but it is apparent that *Carr* only addresses sheriffs and their deputies – not other non-law enforcement subordinates or agents like doctors providing medical care to inmates in the custody of sheriffs.

Regardless of whether Dr. Warr has an official capacity as a governmental actor or whether an official capacity suit fails as a matter of law for any reason provided by Defendants, Defendants' arguments are moot because the court concludes that Ms. Elias has failed to state a claim for deliberate indifference against Dr. Warr in any capacity.

15

supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* at 1360. In the event that the supervisors are not personally participants in a constitutional violation, a plaintiff can make the "causal connection" by pointing to (1) a history or widespread abuse putting the supervisory defendant on notice that the constitutional violation requires correction, and his or her failure to make the necessary correction; (2) the supervisor's implementation of a custom or policy that results in deliberate indifference; (3) the supervisor's personal directive to subordinates to act unlawfully in violation of the plaintiff's constitutional rights; or (4) the supervisor's knowledge that subordinates would act unlawfully and the supervisor failed to stop them from doing so. *Id.*

Ms. Elias alleges generally that lower-level corrections officers at Russell County Jail are "charged with attending to the needs of inmates for medical care," (Doc. # 28, at 6 ¶ 13) and, whoever they were, Defendants failed to supervise and train them. This single conclusory paragraph cannot withstand a motion to dismiss. There are no facts connecting Sheriff Boswell and Lt. Holland's conduct or decisions with a subordinate's constitutional violation against Mr. Sydnor. Accordingly, Sheriff Boswell and Lt. Holland are entitled to qualified immunity, and Ms. Elias's § 1983 supervisory liability claim against them will be dismissed.

## C. Remaining State Law Claims

Ms. Elias's remaining claims (Count II, III, and V) are not federal claims, and Count V is not a cause of action, but a request for declaratory, injunctive, and mandamus relief. A district court may decline to exercise supplemental jurisdiction over state law claims when it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). While the decision to exercise supplemental jurisdiction is discretionary, the Eleventh Circuit "ha[s] encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). In this instance, the court declines to exercise supplemental jurisdiction over the state law claims. Counts II, III, and V are dismissed without prejudice should Ms. Elias wish re-file the claims in state court.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Amended Complaint (Doc. # 29) is GRANTED IN PART and DENIED IN PART. The motion is granted to the extent that Ms. Elias's § 1983 deliberate indifference and supervisory liability claims in Count I are DISMISSED. The motion is otherwise denied, and the remaining state law claims are DISMISSED without prejudice.

A separate final judgment will be entered.

DONE this 30th day of October, 2013.

>	/s/ W. Keith Watkins
> CHIEF UNITED STATES DISTRICT JUDGE